UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HANOVER INSURANCE CO., <br><br> Plaintiff, <br><br> v. <br><br> POWAY ACADEMY OF HAIR DESIGN, INC. and BEAUTY BOUTIQUE, INC., <br><br> Defendants. | Case No.:  15cv536 BTM (DHB) <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

On May 25, 2016, Plaintiff Hanover Insurance Company filed a motion for summary judgment. (ECF No. 33.) For the reasons discussed below, Plaintiff's motion is **DENIED**.

## I. FACTUAL BACKGROUND

Plaintiff Hanover Insurance Company ("Hanover") is incorporated in New Hampshire with its principle place of business in Massachusetts. (Compl. ¶ 6, ECF No. 1.) Defendant Poway Academy owns and operates "Bellus Academy," a beauty college in Poway, California. (Defs.' Mot. 3, ECF No. 20.) Defendant Beauty Boutique, Inc. ("BBI"), owns and operates two additional beauty colleges under the

"Bellus Academy" name in National City, California, and El Cajon, California. (Defs.' Mot. 3-4.)

## A.    Insurance Policies

Plaintiff issued insurance policies to BBI for a period from June 2014 to June 2015 and to Poway Academy for a period from July 2014 to July 2015. (Compl. ¶¶ 37, 43.) The policies contain identical "Employment Practices Liability Insurance" clauses which cover: "all 'Loss' which [the insured] are legally obligated to pay because of 'Claims'[1] first made against [the insured] during the 'Policy Period' and reported to us for any 'Wrongful Act' to which this insurance applies." (Compl. ¶¶ 39, 45.) In addition, both policies include a "Wage and Hour Exclusion," which states:

> This insurance does not apply to "Loss" on account of any "Claim" made against any "Insured" directly or indirectly arising out of, based upon or attributable to . . . [a]ny violation of any of the responsibilities, obligations, or duties imposed by any federal, state or local statutory or common law . . . that governs wage, hour and payroll policies and practices, except the Equal Pay Act.

(Compl. ¶¶ 40, 46.)

While the policies share the Wage and Hour Exclusion, the policy agreement with Poway Academy includes a modification—termed the "Wage and Hour Endorsement"—that alters Plaintiff's duty to defend Defendant Poway Academy. The Wage and Hour Endorsement specifies that "[Hanover] will pay 'Defense Expenses' up to, but in no event greater than $25,000 for any such 'claim', without any liability by [Hanover] to pay such sums that any 'Insured' shall become legally

---

[1] "Claim" is defined in the policies as, "Any complaint or similar pleading initiating a judicial, civil . . . proceeding (including any appeal resulting from it), to which an 'Insured' is provided notice and which subjects an 'Insured' to a binding adjudication of liability for monetary or non-monetary relief . . . ." (Compl. ¶¶ 42, 49.)

obligated to pay as 'Damages.'" (Compl. ¶ 47.)

### B. Underlying State Court Action

Poway Academy and BBI are currently defendants in a pending class action in San Diego Superior Court ("State Court Action"). (Compl. ¶ 1.) In August 2014 Stephanie Hicks ("Hicks") filed a "Class Action Complaint" against Poway Academy and BBI. (Compl. ¶ 13.) Hicks attended the "Bellus Academy" in National City from November 2010 to April 2012. (Compl. ¶ 19.) As part of the school's policy, Hicks was sent to the "floor" of the Academy that serves as a salon, performing services for paying clients. (Compl. ¶¶ 19-20.) Even though the students performed the services, the Class Action Complaint states that the students were not compensated. (Compl. ¶ 20.)

Hicks' Class Action Complaint alleges the following claims: (1) failure to pay minimum and overtime wages in violation of California Labor Code ("CLC") §§ 510 and 1194; (2) failure to provide meal/rest periods or compensation in lieu of in violation CLC §§ 226.7 and 512; (3) failure to timely pay wages at separation in violation of CLC §§ 201-03; (4) failure to provide accurate itemized wage statements in violation of CLC § 226(a)(b); (5) failure to reimburse reasonable business expenses in violation of CLC § 2802; and (6) violations of California's Unfair Business Practices Act. (Compl. ¶ 13.) Hicks seeks to represent a class of plaintiffs comprised of students that also attended "Bellus Academy" locations and performed similar services but were not compensated. (Compl. ¶ 24.)

### C. Plaintiff's Federal Complaint

In this case, Plaintiff seeks both declaratory and monetary relief. Specifically, Plaintiff seeks a determination that it has: (1) no duty to defend claims against Defendant Poway Academy upon exhaustion of the $25,000 limit; (2) no duty to indemnify claims against Poway Academy; (3) no duty to defend claims against

BBI; and (4) no duty to indemnify claims against BBI. Furthermore, Plaintiff seeks reimbursement of all defense payments from BBI and reimbursement of defense payments exceeding $25,000 from Poway.

On May 25, 2016, Plaintiff filed a motion for summary judgment arguing that all of the claims in the Class Action Complaint fall within the Wage and Hour Exclusion specified in Defendants' insurance policies.

## II. STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. Id. at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. Celotex, 477 U.S. at 314. The nonmoving

party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." Anderson, 477 U.S. at 256. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. DISCUSSION

Plaintiff argues that the wage and hour exclusion clauses apply to all of the claims in the State Court Action, and that Plaintiff therefore does not have a duty to defend or indemnify Defendants. Defendants assert that summary judgment is improper because, while some of the claims may fall within the exclusion, Plaintiff cannot negate any potential for coverage because California Labor Code § 2802 is not covered under the wage and hour exclusion.

### A. Legal Framework

Under California law, a liability insurer's duty to defend is broader than the insurer's duty to indemnify due to the "difficulty in determining whether the third party suit falls within the indemnification coverage before the suit is resolved." Pension Trust Fund for Operating Engineers v. Federal Insurance Co., 307 F.3d 944, 949 (9th Cir. 2002) (citing Fresno Econ. Import Used Cars, Inc. v. U.S. Fid. & Guar. Co., 76 Cal. App. 3d 272, 278 (1977)). To determine whether or not the insurer has a duty to defend, the allegations of the underlying complaint are compared with the policy's terms, "to see if they reveal a possibility that the claims may be covered by the policy." Pension Trust, 307 F.3d at 949 (citation omitted).

In this case, Plaintiff, as the insurer, necessarily bears a higher burden than the Defendants because, "[o]nce the insured makes a showing of potential coverage, the insurer may be relieved of its duty only when the facts alleged in the underlying suit can by no conceivable theory raise a single issue that could bring

it within the policy's coverage." Id.

Courts apply ordinary rules of contract interpretation when construing the terms of an insurance policy. See id. Accordingly, the Court's task is to "discern the mutual intent of the parties at the time the contract was formed." Id. at 950. "The best evidence of the parties' intent is the plain language of the policy." Id.

The parties do not dispute that five of the six claims in the State Court Action fall within the Wage and Hour Exclusion. However, the parties dispute whether Hicks' claim for reimbursement of certain expenditures for beauty products and tools pursuant to California Government Code § 2802 excuses Plaintiff from its duty to defend the State Court Action.

**B.   California Labor Code § 2802**

California Labor Code § 2802 provides that, "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." Cal. Labor Code § 2802(a). As discussed above, the policies at issue contain the same Wage and Hour Exclusion clause, which states, inter alia, that the insurance policy does not apply to any claim for a violation of any state law "that governs wage, hour and payroll policies and practices." (Compl. ¶¶ 40, 46.) Plaintiff argues that § 2802 is a state law which "governs wage, hour and payroll policies and practices," while Defendants assert it does not.

In the underlying State Court Action, Hicks seeks indemnification pursuant to § 2802 for expenditures she made that were necessary for her to work in the beauty salons. (See Class Action Compl. ¶¶ 40-45, attached to Compl. as Ex. 1, ECF No. 1-2.) Specifically, Hicks alleges that she and the other students "were required to purchase, maintain, and replace if lost or damaged, the scissors, brushes, combs, and other tools needed to perform services for . . . paying clients." (Class Action Compl. ¶ 42.) Hicks received this "kit" on the first day of school.

(Decl. of M. Andrew Schneider, in Supp. of Opp'n, Ex. B, 11–12, ECF No. 34-1). In addition to the tools needed to perform services, the kit contained educational materials, including "Milady's book set," a "Score State Board Procedures" book and a "Nuts and Bolts" book set, which appears to be a business course book. (Id. at 13–14).

The California Court of Appeals in In re Work Uniform Cases, 133 Cal. App. 4th 328, (2005), addressed whether a § 2802 claim for payment for uniforms was distinct from wages such that it did not conflict with municipal wage-setting powers. The plaintiffs sought indemnification for uniforms that they were required to purchase as part of their employment. Id. at 332–33. The court referenced a prior California appellate court decision which held that a regulation regarding payment for employee uniforms in effect concerned employee wages. Id. at 338 (citing United Air Lines, Inc. v. Indus. Welfare Comm'n, 211 Cal. App. 2d 729 (1963)). The court reasoned that, because plaintiffs were seeking reimbursement for money spent out-of-pocket on uniforms, the effect of the claim was for an increase in wages. Work Uniform, 133 Cal. App. 4th at 338. The court concluded that "payment to employees for work uniforms is a part of the employees' compensation and should be considered like any other payment of wages, compensation or benefits." Id. Accordingly, the plaintiffs' claim under § 2802 was in direct conflict with a state statute which designated the power to set wages for public employees to the public entity, not the courts. Id.

Plaintiff cites Admiral Insurance Co. v. Kay Automotive Distributors, Inc., 82 F. Supp. 3d 1175 (C.D. Cal. 2015), for the proposition that § 2802 is a wage and hour law. Faced with the same issue of whether § 2802 is a wage and hour law, Judge Pregerson began his analysis by noting certain "nontrivial arguments" as to why § 2802 is not a wage and hour law. Id. at 1181. Specifically, the court noted that the plain language of the statute does not touch on wages paid and hours worked; that the provision falls under the "Employment Relations" division of the

California Labor Code, not the "Employment Regulation and Supervision" division where compensation and working hours are codified; and that, to the extent the provision is ambiguous, the ambiguity should be resolved against the insurer. Id. Regardless, the court ultimately held that § 2802 is a wage and hour law, holding that, "[t]he function of § 2802 parallels the function of the minimum wage and other wage and hour laws—they all prevent employers from offloading expenses onto their employees, whether by wage theft or by failing to reimburse them for business costs." Id. at 1182.

Considering the narrow holding in Work Uniform and the various purposes that § 2802 serves, the Court agrees with Defendants that § 2802 is not a wage and hour law. The court in Admiralty Insurance Co. based its conclusion, in part, on the fact that § 2802 claims are "frequently paired with the Division 2 sections [of the Labor Code] in actions against employers who allegedly underpay their employees." Id. at 1181–82. It found noteworthy that courts often describe these actions as "wage and hour" class actions, without distinguishing between § 2802 claims and other wage related claims. Id. In absence of clear California authority, the Court does not find that the pairing of these claims provides enough support to conclude that § 2802 is presumptively a wage and hour statute. The Court here is not bound by the holding in Admiralty Insurance Co. and as such, departs from its reasoning.

The court in Work Uniform did not hold that § 2802 is a wage and hour statute; its holding was narrower than that. It held that payment for work uniforms, as provided for under § 2802, should be considered like any other payment of wages or compensation. Work Uniform, 133 Cal. App. 4th at 338. Though one purpose of § 2802 is to "prevent employers from offloading expenses onto their employees," that does not mean it is the only function it serves, so as to render it a wage and hour statute. For example, § 2802 also provides for indemnification for third-party suits. Under § 2802, an employer is required to defend or indemnify an

employee who is sued by third persons for conduct in the course and scope of the employee's employment. See Los Angeles Police Protective League v. City of Los Angeles, 27 Cal. App. 4th 168; see also Devereaux v. Latham & Watkins, 32 Cal. App. 4th 1571. Taking this separate purpose into account, the Court finds that § 2802 is not a wage and hour law and in turn, not subject to the Wage and Hour Exclusion.

Moreover, Defendants argue that "[t]he indemnification requirement is not tied to hours worked or wages paid." (Def.s' Opp'n at 14). They cite to several cases to demonstrate that from its inception, "§ 2802 had no relation to 'wage and hours' claims.'" (Id.) The Courts finds their argument persuasive.

Even assuming that under Work Uniform, the claim for reimbursement of the tools constitutes a wage claim, the Court must nevertheless deny Plaintiff's motion. Hicks seeks reimbursement for the *entire* cost of the "kit." This kit was provided to her on the first day of school and included educational materials. It is unclear whether the books were exclusively used to perform services for Defendants' clients. Thus, there is a possibility that reimbursement for the books would not be considered compensation and fall outside the Wage and Hour Exclusions. Therefore, because there is a potential for coverage as to the educational materials, Plaintiff is not relieved of its duty to defend as to the § 2802 claim.

Finally, the question of whether a claim under § 2802 is an excluded wage and hour claim has not been definitively decided by the California appellate courts. There is at least a real possibility that it is not excluded and therefore covered. Because of this Plaintiff must defend.

## C.  Reimbursement for Defense Costs

Plaintiff also moves for reimbursement of the costs incurred from defending Defendants on claims for which the parties agree there is no potential coverage existed under the policies. Plaintiff relies on Buss v. Superior Court, 939 P.2d 766

(Cal. 1997), to argue that it is entitled to recover $45,573.89 from Defendant Poway and $44,992.63 from Defendant BBI.

In Buss, the California Supreme Court held that in a "mixed" action, in which some of the claims are at least potentially covered and the others are not, an insurer, under a reservation of rights, may seek reimbursement from the insured for certain defense costs. Id. at 776. The court revisited an insurer's duty to defend and duty indemnify. Id. at 773. It noted that while insurers only have a duty to defend as to claims that are at least potentially covered, in a "mixed" action, "the insurer has a duty to defend the action in its entirety." Id. at 775 ("To defend meaningfully, the insurer must defend immediately. To defend immediately, it must defend entirely."). However, because an insured never paid premiums for claims that are not even potentially covered, an insurer may seek reimbursement from the insured for defense costs of those claims. Id. at 776. The court limited reimbursement to only those defense costs that can be allocated solely to the claims that are not even potentially covered, and placed the burden of proof—preponderance of the evidence—on the insurer. Id. at 778.

Like in Buss, here the action is a "mixed action." As discussed above, there are claims that are not even potentially covered, like those that fall directly within the Wage and Hour Exclusions and there is one claim that is potentially covered—the § 2802 claim. Under Buss, Plaintiff carries the burden of showing, by a preponderance of the evidence, that the defense costs it seeks to recover are solely allocated to claims that are not even potentially covered. Plaintiff has not provided any evidence to show that the $45,573.89 it seeks from Defendant Poway and the $44,992.63 it seeks from Defendant BBI are allocated solely to the claims that are not even potentially covered. As such, Plaintiff has failed to meet its burden of proof for reimbursement.  Plaintiff's request is **DENIED** without prejudice.

//
//

## IV. CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Summary Judgment (ECF No. 33) is **DENIED**.

**IT IS SO ORDERED.**

Dated: November 14, 2016

_____
Barry Ted Moskowitz, Chief Judge
United States District Court